IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**ASHLEY FORTENBERRY,** *et al.*                                                  **PLAINTIFFS**

**V.**                                                    **CIVIL ACTION NO. 2:14-CV-56-KS-MTP**

**CHRIS E. PRINE,** *et al.*                                                       **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **denies** the Plaintiffs' Motion to Remand [16]. Defendant Greater East Lampton Church, Inc. is dismissed as improperly joined. The parties shall immediately contact the chambers of the Magistrate Judge to schedule a case management conference.

### I. BACKGROUND

This is an insurance dispute arising from an automobile accident that occurred in Marion County, Mississippi. On August 15, 2010, Plaintiffs were on their way to a church choir event when a vehicle turned in front of them, causing an accident. All Plaintiffs were injured. The other driver, Chris Prine, was killed.

Defendant Church Mutual Insurance Company ("Church Mutual") provided automobile insurance – including uninsured motorist coverage – to Greater East Lampton Church, Inc. ("Greater East Lampton"), the church upon whose behalf Plaintiffs claim to have traveled. Accordingly, Plaintiffs' counsel submitted a claim on the Church Mutual policy, arguing that Plaintiffs were "insureds" under the policy's terms and entitled to uninsured motorist coverage for their injuries. Church Mutual denied Plaintiffs' claim.

Plaintiffs filed a Complaint in the Circuit Court of Marion County, Mississippi, on July 29, 2013. They named Prine, Greater East Lampton, and Church Mutual as Defendants, and alleged that they had suffered various severe bodily injuries. They alleged that Prine was negligent in the operation of his vehicle, and that his insurance coverage was not sufficient to cover their damages. Therefore, they claimed Church Mutual was liable under the uninsured motorist provision of its policy issued to Greater East Lampton.

On April 8, 2014, Plaintiffs filed an Amended Complaint, naming the same parties as Defendants. They asserted claims of negligence, negligence per se, and loss of consortium against Prine, and they asserted claims of breach of contract, bad faith, and breach of the covenant of good faith and fair dealing against Church Mutual. They demanded compensatory damages for their physical and emotional injuries, punitive damages, fees, costs, and interest.

On April 25, 2014, Church Mutual removed the case to this Court on the basis of diversity jurisdiction. Church Mutual contends that Greater East Lampton was improperly joined to defeat diversity jurisdiction, and that Chris Prine's former residency must be disregarded because he died prior to Plaintiff's initial filing. On May 23, 2014, Plaintiffs filed a Motion to Remand [16], which the Court now considers.

## II. DISCUSSION

"Federal courts are courts of limited jurisdiction, having only the authority endowed by the Constitution and that conferred by Congress." *Halmekangas v. State Farm Fire & Cas. Co.*, 603 F.3d 290, 292 (5th Cir. 2010). This Court has removal

jurisdiction in any case where it has original jurisdiction, 28 U.S.C. § 1441(a), and it has "original jurisdiction of all civil matters where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . [c]itizens of different States . . . ." 28 U.S.C. § 1332(a). Because federal courts have limited jurisdiction and removal raises significant federalism concerns, "any doubt as to the propriety of removal should be resolved in favor of remand," *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008), and the "removal statutes are to be construed strictly against removal and for remand." *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996).

### A.   *Timeliness of Removal*

First, Plaintiffs argue that Church Mutual's removal was untimely. The removal statute provides:

> (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> * * *
>
> (3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b) (2014). "Restated, if the initial pleading sets forth a claim that

3

triggers the removal clock, the defendant must file notice of removal within thirty days of receiving it. If the initial pleading did not trigger the thirty-day removal clock, a notice of removal must be filed within thirty days of the defendant's receipt of a document from which it may ascertain that the case is, or has become, removable." *Mumfrey v. CVS Pharm., Inc.*, 719 F.3d 392, 397-98 (5th Cir. 2013). The "information supporting removal" contained in the "other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal . . . ." *Bosky v. Kroger Tex., LP*, 288 F.3d 208, 211 (5th Cir. 2002).[1]

1. *The Original Complaint*

First, Plaintiffs contend that the allegations of the original complaint provided Church Mutual with notice that the amount in controversy exceeded $75,000. "[F]or the purposes of the first paragraph of § 1446(b), the thirty day time period in which a defendant must remove a case starts to run from the defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its face that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992). The Complaint [1-2]

---

[1] The United States District Court for the Northern District of Mississippi noted the apparent dichotomy this standard creates. *See Grooms v. Saint*, No. 1:10-CV-175-SA-JAD, 2010 U.S. Dist. LEXIS 128099, at *13 n. 2 (N.D. Miss. Dec. 3, 2010). If a defendant removes a case upon receipt of "other paper," it must demonstrate to the Court that the amount in controversy more likely than not exceeds $75,000. *Id.* (citing *De Aquilar v. Boeing Co.*, 47 F.3d 1404, 1408-12 (5th Cir. 1995)). However, if a plaintiff contends that service of the same "other paper" started the clock on the defendant's time period for removal, he must demonstrate that it was "unequivocally clear and certain" that the amount in controversy exceeded $75,000. *Id.*

did not contain a "specific allegation that damages are in excess of the federal jurisdictional amount. The removal clock was thus not triggered until [Church Mutual] received a copy of an 'amended pleading, motion, order, or other paper from which it was first ascertainable that the case was removable . . . ." *Mumfrey*, 719 F.3d at 400.

Plaintiffs contend that the case was removable because it was facially apparent from the Complaint that the damages sought or incurred exceed the minimum jurisdictional amount. *See De Aguilar*, 11 F.3d at 57. However, "the 'facially apparent' inquiry is relevant only to 'amount dispute' cases," in which the amount in controversy is disputed, rather than "timeliness dispute" cases, in which the timeliness of removal is disputed. *Mumfrey*, 719 F.3d at 400. In other words, Church Mutual may have been able to remove based on the original Complaint, creating an "amount dispute" if Plaintiffs then sought remand, but even if Church Mutual could have immediately removed based on the original Complaint, the clock did not start running such that it was required to do so. *Id.* at 400 n. 13.

Even if the "facially apparent" standard applied, the allegations of the original Complaint were not sufficient to meet it. The Court will focus on Plaintiff Ashley Fortenberry's allegations because she is the only plaintiff addressed in the parties' briefing, and she apparently suffered the most severe injuries. In the original Complaint [1-2], Fortenberry claimed that she suffered numerous contusions, cuts, and abrasions; broken bones; injuries to the cervical, thoracic, and lumbar spine; and leg, arm, and head injuries. She also claimed that the accident caused continuing "pain and suffering," that it diminished her earning capacity, and that her 2006 Chevrolet Impala

5

was severely damaged.

In the Court's opinion, it was not facially apparent from these allegations that Fortenberry sought damages in excess of the jurisdictional minimum. While Fortenberry alleged a wide variety of injuries, she provided no specific factual allegations regarding the extent of her injuries, the damage to her vehicle, the types or duration of medical treatment received, or the amount of her medical bills. At best, the allegations in the Complaint showed that it was possible – or even likely – that the amount in controversy exceeded $75,000, but it was not apparent.[2]

2.      *"Other Paper"*

Next, Plaintiffs contend that "other paper" served on Church Mutual more than thirty days prior to removal demonstrated that the "amount in controversy" exceeded the jurisdictional threshold. Specifically, Plaintiffs point to discovery responses [17-5,

---

[2]*See Harden v. Field Mem'l Cmty. Hosp.*, 265 F. App'x 405, 408 (5th Cir. 2008) (plaintiff's allegations of a fractured nose, fractured jaw, lacerations to her face and gums, broken dentures, and contusions to her face and body did not provide sufficient notice to defendant that the amount in controversy exceeded the jurisdictional minimum); *Calhoun v. Group Contrs., LLC*, No. 2:12-CV-70-KS-MTP, 2012 U.S. Dist. LEXIS 84697, at *5-*6 (S.D. Miss. June 19, 2012) (where plaintiff alleged a "violent" auto accident, causing "significant damage" to vehicle and "tremendous physical injury," seeking past and future pain and suffering, loss of enjoyment of life, past and future medical bills, and disfigurement, it was not facially apparent that amount in controversy exceeded $75,000):; *Davis v. Office Max*, 2011 U.S. Dist. LEXIS 137613, at *10-*11 (S.D. Miss. Nov. 29, 2011) (where plaintiff alleged that she suffered extreme emotional distress, pain, suffering, mental anguish, lost wages, and medical expenses after a mechanical door closed on her wrist, it was possible, but not facially apparent, that the amount in controversy exceeded $75,000); *Reed v. Flores*, 2009 U.S. Dist. LEXIS 105175, at *7 (N.D. Miss. Nov. 10, 2009) (where plaintiff alleged severe physical and emotional damage, loss of vision in one eye, pain and suffering, and medical expenses, it was not facially apparent that her damages exceeded $75,000).

17-6] provided by Ashley Fortenberry on January 31, 2014; Plaintiffs' Motion for Leave to Amend the Complaint [1-2] filed on February 12, 2013; and correspondence among counsel [17-7] dated February 21, 2014.

"[I]nformation relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an 'other paper' under subsection (b)(3)." 28 U.S.C. § 1446(c)(3)(A) (2014); *see also Cole v. Knowledge Learning Corp.*, 416 F. App'x 437, 440 (5th Cir. 2011) (discovery response and demand letter qualified as "other paper" under § 1446 if it is "unequivocally clear and certain, so that defendant may ascertain the action's removability"); *Eggert v. Britton*, 223 F. App'x 394, 397 (5th Cir. 2007) ("discovery-type documents" may constitute "other paper"). The Court may combine information contained in various "other papers" to assess the timeliness of removal. *Harden*, 516 F. Supp. 2d at 608-09; *see also Bosky*, 288 F.3d at 210. As noted above, "information supporting removal" contained in "other paper must be 'unequivocally clear and certain' to start the time limit running for a notice of removal . . . ." *Bosky*, 288 F.3d at 211.

First, Plaintiffs' motion seeking leave to amend their original complaint did not start the time period for removal. "[T]he majority of courts that have considered the effect of a motion to amend a petition filed in state court have concluded that such a motion does not commence the thirty-day deadline for filing a notice of removal in federal court." *Bolden v. McMillin*, No. 3:06-CV-567-L-N, 2006 U.S. Dist. LEXIS 90200, at *2 (S.D. Miss. Dec. 13, 2006); *see also Schoonover v. W. Am. Ins. Co.*, 665 F. Supp. 511, 514 (S.D. Miss. 1987) (motion for leave to amend did not trigger 30-day time

7

period because court retained discretion to deny leave to amend); *O'Keefe v. State Farm Fire & Cas. Co.*, No. 1:08-CV-600-HSO-LRA, 2009 U.S. Dist. LEXIS 127018, at *19 n. 2 (S.D. Miss. Jan. 13, 2009). If the state court retained discretion to deny the amendment, then the "information supporting removal" was not "unequivocally clear and certain." *See Bosky*, 288 F.3d at 211; *O'Keefe*, 2009 U.S. Dist. LEXIS 127081 at *19 n. 2.

The Court will consider the discovery responses [17-5, 17-6] and correspondence [17-7] in tandem. Fortenberry claimed lost wages of approximately $11,520.00, and medical bills of approximately $43,000.00. Plaintiffs' counsel clarified the medical bills figure, representing that it only reflected medical bills incurred at a single provider up to the date of the correspondence. Therefore, as early as January 31, 2014, Defendant knew that Plaintiff Ashley Fortenberry was claiming at least $54,520.00 in damages, and as early as February 21, 2014, Defendant knew it was likely that Fortenberry would supplement the damages claim with additional medical bills.

As for Fortenberry's injuries, in discovery she claimed to have suffered "fractured ankles" and "numerous lacerations and contusions."[3] In the Complaint [1-2], Fortenberry claimed that she and all of her passengers suffered numerous contusions,

---

[3] Plaintiffs argue that Defendant knew more about Fortenberry's injuries than was revealed in the "other paper," pointing to documents created in the process of its claim investigation [17-1, 17-2, 17-3, 17-4]. Defendant's subjective knowledge of the actual amount in controversy is irrelevant. *Bosky*, 288 F.3d at 210; *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996); *Chapman*, 969 F.2d at 163. All that matters is what the initial pleading "affirmatively reveals on its face," *Chapman*, 969 F.2d at 163, or whether the "information supporting removal" in the "other paper" is "unequivocally clear and certain." *Bosky*, 288 F.3d at 211.

cuts, and abrasions; broken bones; injuries to the cervical, thoracic, and lumbar spine; and leg, arm, and head injuries. She also claimed that the accident caused continuing "pain and suffering," and that it diminished her earning capacity. Fortenberry also alleged that her vehicle, a 2006 Chevrolet Impala, was severely damaged.

In the Court's opinion, these allegations do not constitute "unequivocally clear and certain" information supporting removal. At best, the discovery responses [17-5, 17-6] and correspondence [17-7] demonstrate that it is "unequivocally clear and certain" that Fortenberry seeks more than $54,520.00 in damages. It may be probable, based on this information, that she seeks more than $75,000, but it is not "unequivocally clear and certain." She did not claim any mental or emotional injury, and it is not unequivocally clear that she claimed any future pain and suffering or future lost wages. While she referred to punitive damages in her interrogatory responses [17-6], she did not assert a claim for punitive damages until she filed the Amended Complaint [1-2] on April 8, 2014.[4]

Therefore, the Court finds that the time period for removal did not begin to run upon Defendant's receipt of Plaintiff Fortenberry's discovery responses [17-5, 17-6] on

---

[4]*Cf. Harden*, 516 F. Supp. 2d at 607 (allegations of "fractured jaw and nose, contusions, and lacerations" were not "unequivocally clear and certain" claims for more than $75,000); *Hughes v. Safeco Ins. Co.*, 2011 U.S. Dist. LEXIS 155691, at *3-*4 (S.D. Miss. June 14, 2011) (claim for "injuries and damages far in excess of $25,000.00" was not "unequivocally clear and certain"); *Stampley v. Fred's Dollar Store of Miss.*, No. 5:07-CV-153-DCB-JMR, 2008 U.S. Dist. LEXIS 115280, at *7 (S.D. Miss. Feb. 16, 2008) ("uncertainty or contingency concerning the amount of damages" does not constitute "unequivocally clear and certain" information supporting removal).

9

January 31, 2014, or upon its receipt of correspondence from Plaintiffs' counsel [17-7] on February 12, 2013. Rather, it began to run upon either (1) the state court's entry of an agreed order permitting Plaintiffs to amend the complaint, on April 2, 2014; or (2) the filing of Plaintiffs' amended complaint on April 8, 2014. In either case, Church Mutual's removal on April 25, 2014, was timely.

### B.   *Complete Diversity*

Next, Plaintiffs argue that the parties are not completely diverse. For diversity jurisdiction, the parties must be completely diverse. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1079 (5th Cir. 2008). "Complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *Id.* Plaintiffs are citizens of Mississippi. Church Mutual is a citizen of Wisconsin. Chris Prine was a citizen of Mississippi before he died, and Greater East Lampton is a citizen of Mississippi.

Defendant contends that the non-diverse Defendants – Greater East Lampton Church and Chris Prine – were improperly joined. When a defendant alleges diversity jurisdiction based on improper joinder, it has a "heavy burden" of proving the improper joinder. *Marathon Oil Co. v. Ruhrgas, A.G.*, 115 F.3d 315, 319 (5th Cir. 1997). There are two ways to prove improper joinder: "(1) that there was actual fraud in the plaintiff's pleading of the jurisdictional facts or (2) that the plaintiff has no possibility of establishing a cause of action against the non-diverse defendant in state court." *Howard v. CitiFinancial, Inc.*, 195 F. Supp. 2d 811, 817-18 (S.D. Miss. 2002).

Under the second prong (inability to establish a cause of action), the court

must determine whether there is arguably a reasonable basis for predicting that state law might impose liability. This means that there must be a reasonable possibility of recovery, not merely a theoretical one. Further, the standard for evaluating a claim of improper joinder is similar to that used in evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The scope of the inquiry for improper joinder, however, is broader than that for Rule 12(b)(6) because the Court may pierce the pleadings and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim. In conducting this inquiry, the court must also take into account all unchallenged factual allegations, including those in the complaint, in the light most favorable to the plaintiff. In addition, the Court must resolve all ambiguities of state law in favor of the non-removing party.

*Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (citations and punctuation omitted).[5]

  1.  *Greater East Lampton Church, Inc.*

In the First Amended Complaint [1-2], Plaintiffs asserted no claims whatsoever against Greater East Lampton. Counts I and II (negligence and negligence per se) are asserted against Prine. Count III (loss of consortium) is an element of damages, rather than a cause of action; in any case, it is not directed at Greater East Lampton. Counts IV, V, and VI (failure to pay insurance benefits, bad faith, breach of covenant of good faith and fair dealing) are asserted against Church Mutual.

---

[5]Plaintiffs argue that Church Mutual's improper joinder arguments are untimely because Church Mutual could have ascertained that Greater East Lampton and Chris Prine were improperly joined upon either the filing of the initial Complaint or the filing of Prine's Answer. *See* 28 U.S.C. § 1446(b) (providing that case shall be removed within thirty days after the receipt by defendant of the initial pleading, or within thirty days of receipt of other paper if initial pleading is not removable). Of course, the improper joinder of non-diverse defendants was not the only impediment to removal. As discussed above, the amount in controversy requirement was not satisfied until later in the course of litigation.

11

The only factual allegations concerning Greater East Lampton are that Plaintiffs acted at its "behest and direction" and were "performing business on [its] behalf." These allegations are not sufficient to survive a Rule 12(b)(6) analysis, and the Court finds that they do not provide a reasonable basis to predict that a state court would impose liability upon Greater East Lampton. *Id.* Accordingly, the Court dismisses Greater East Lampton Church, Inc. as improperly joined.[6]

### 2.   *Chris Prine/The Estate of Chris Pine*

Defendant Chris Prine died several months before Plaintiffs filed their initial Complaint. Therefore, Plaintiffs' initial claims against him were a legal nullity. *Humphreys v. Irvine*, 14 Miss. 205, 207 (Miss. 1846) ("A judgment for or against a dead man is usually a nullity."); *In re Rules of Civil Procedure*, No. 89-R-99001-SCT, 2014 Miss. LEXIS 288, at *39 (Miss. June 9, 2014); *cf. Garlock Sealing Techs., LLC v. Pittman*, No. 2008-IA-01572-SCT, No. 2008-IA-01572-SCT, 2010 Miss. LEXIS 539, at *8-*10 (Miss. Oct. 14, 2010). Plaintiffs have not cited to any authority providing that a dead person can be a "real and substantial" party to litigation, and they do not dispute that the Court must "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003).

Plaintiffs argue, though, that they may substitute Prine's Estate. They are

---

[6]The Court also notes that Plaintiffs provided no response to Defendant's argument that Greater East Lampton was improperly joined and made no attempt to justify its joinder.

mistaken. Rule 25 "allows substitution for a deceased party where the claim is not extinguished by his death," but "the rule contemplates substitution for someone who had been made a party before his death." *Mizukami v. Buras*, 419 F.2d 1319, 1320 (5th Cir. 1969). It is not available where the decedent "predeceased the filing of the action," as happened here. *Id.*; *see also Bridges v. Enter. Prods. Co.*, 551 F. Supp. 2d 549, 562 (S.D. Miss. 2008).[7]

Plaintiffs contend that naming Prine rather than his Estate was a mere "misnomer" or "party-name error," citing *Scaggs v. GPCH-GP, Inc.*, 23 So. 3d 1080, 1083-84 (Miss. 2009), but the "misnomer" doctrine is inapplicable here. "Chris Prine" is not a different name for "the Estate of Chris Prine." Legally, they are separate persons. The misnomer doctrine acknowledges this distinction: "a misnomer . . . in the name of a party may be corrected by amendment, provided it does not effect an entire change of parties . . . ." *Id.* at 1083 (quoting 67A C.J.S. *Parties* § 237, pp. 760-61 (2002)). Plaintiff failed to cite any case applying the "misnomer" doctrine to a situation like this one – where a decedent was named, rather than his estate.

Therefore, Plaintiffs' claims against Chris Prine are a legal nullity, and Rule 25 does not permit substitution of his Estate. Accordingly, the Court finds that Prine should be disregarded for purposes of determining whether the parties are completely

---

[7]Likewise, Mississippi's Rules of Civil Procedure do not allow substitution in this situation. *See In re Rules of Civil Procedure*, 2014 Miss. LEXIS 288 at *39 ("If the named plaintiff was deceased at the time the original complaint was filed, then the original complaint is null and void and the real party in interest cannot be substituted as the proper plaintiff because a valid action was never commenced.").

13

diverse.[8]

## C.   *Waiver of Right to Remove*

Plaintiffs argue that Church Mutual waived its right to remove by filing an Answer in the state court. "A defendant can waive the right to remove to federal court if it proceeds to defend the action in state court or otherwise invoke the processes of that court." *John H. Carney & Assocs. v. State Farm Lloyds*, 376 F. Supp. 2d 697, 703 (N.D. Tex. June 17, 2005) (citing *Brown v. Demco, Inc.*, 792 F.2d 478, 481 (5th Cir. 1986)). But the "waiver must be clear and indicate a specific, positive intent to proceed in state court." *Id.* Furthermore, "[a]ny actions taken in state court before it became ascertainable that the case was removable cannot logically be indicative of a decision

---

[8] Plaintiffs have, in fact, settled their claims against the Estate for the coverage limit of Prine's liability policy. Although Defendants raised this point in their response brief, Plaintiffs conspicuously failed to address it in their reply – neither confirming nor denying that they had settled their claims against the Estate. The attorneys' correspondence [17-7] of February 21, 2014, confirms the settlement.

On June 30, 2014, the Court held a teleconference to ask counsel whether Plaintiffs' claims against the Estate had been settled. Plaintiffs' counsel admitted that they had reached a settlement agreement with the Estate, but argued that the claims technically remained because the agreement had not been approved by the Chancery Court. *See* MISS. CODE ANN. § 93-13-59; *In re Estate of Ashmore*, No. 1:97-CV-177-B-D, 1998 U.S. Dist. LEXIS 4645, at *2-*3 (N.D. Miss. Mar. 25, 1998). This argument might have merit. *See Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 693-94 (5th Cir. 1995) (where Texas law required court approval of settlement agreement, removal prior to court approval of settlement with non-diverse defendant was premature).

The argument's possible merit makes Plaintiffs' failure to assert it in briefing even more perplexing, though. Indeed, Plaintiffs' silence on the issue smacks of gamesmanship. It is ultimately inconsequential, as the Estate is not a party to the case. But such litigation tactics – hiding a key fact from the Court in an effort to avoid federal jurisdiction – are beneath any officer of the Court.

by the Defendants to continue in state court rather than federal court." *Id.* (quoting *Hydro-Action, Inc. v. James*, 233 F. Supp. 2d 836, 840 (E.D. Tex. 2002)); *see also Scanlan v. Radiance Techs., Inc.*, No. 3:07-CV-145, 2008 U.S. Dist. LEXIS 77543, at *10-*11 (N.D. Miss. Sept. 11, 2008) (where plaintiffs may have maneuvered to prevent removal, defendant's litigation in state court pending determination of removability did not waive right to removal).

Here, Church Mutual filed no dispositive motions in state court. *See Johnson v. Heublein Inc.*, 227 F.3d 236, 244 (5th Cir. 2000) (where defendant filed both motions to dismiss and motions for summary judgment in state court, it invoked jurisdiction of the state court in resolving issues presented by the complaint and waived right to remove). It did not seek adjudication on the merits. It merely answered the initial complaint before the case became removable. That does not constitute waiver of the right to remove. *John H. Carney*, 376 F. Supp. 2d at 703; *Scanlan*, 2008 U.S. Dist. LEXIS 77543 at *10-*11.

### III. CONCLUSION

For the reasons stated above, the Court **denies** Plaintiffs' Motion to Remand [16]. Defendant Greater East Lampton Church, Inc. is dismissed as improperly joined. The parties shall immediately contact the chambers of the Magistrate Judge to schedule a case management conference.

SO ORDERED AND ADJUDGED this 2nd day of July, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE

15

16